IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KARA HENDERSON and WILLIAM HENDERSON, individually and as Parents, Next Friends, and Natural Guardians of
G.H., their minor child,

                  Plaintiffs,

vs.

UNITED STATES OF AMERICA,

                  Defendant.

Case No. CV423-216

## COMPLAINT FOR DAMAGES

COME NOW PLAINTIFFS, KARA HENDERSON and WILLIAM HENDERSON, individually, and as parents, next friends, and natural guardians of their minor son, G.H., and file their Complaint for Damages against the Defendant, UNITED STATES OF AMERICA, showing the Court as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    This action seeking damages against the Defendant, United States of America (U.S.A.) arises under the Federal Tort Claims Act, Sections 2671 through 2680 of Title 28 of the United States Code. (28 U.S.C. §2671, *et seq.).*

2.    Minor-Plaintiff G.H. was born on October 13, 2020, at Winn Army Community Hospital located in Fort Stewart, Liberty County, Georgia.

1

3.      Minor-Plaintiff G.H. is the son of plaintiffs, Kara Henderson and William Henderson, who sue as parents, natural guardians, and next friends. Kara Henderson and William Henderson reside at 433 Turpentine Road NE, Ludowici, Long County, Georgia 31316, which is within the Southern District of Georgia. The negligent acts and omissions forming the basis of the Plaintiffs' claims occurred within the Southern District of Georgia.

4.      Defendant U.S.A. operates a federally qualified military health care center known as Winn Army Community Hospital (hereafter "Winn Army") at 1061 Harmon Avenue, Fort Stewart, Liberty County, Georgia, which is within the Southern District of Georgia, Savannah Division.

5.      Defendant U.S.A., in operating the military health care center, holds itself out to patients such as Plaintiffs as providing medical and hospital services to use that degree of care, skill, diligence, and attention used by health care centers generally in the care and treatment of patients under similar conditions and like surrounding circumstances as those presented in this action.

6.      The health care center operated by Defendant U.S.A. employs, among others, doctors, certified nurse midwives, mid-level advance medical and nursing practitioners, nurses, nurses' aides, and other healthcare providers over which it exercises exclusive control and supervision, with the right to employ, appoint, and terminate such health care providers.

7.     Summons and Complaint may be served upon Defendant U.S.A. by serving Jill E. Steinberg, Acting U.S. Attorney for the Southern District of Georgia, at U.S. Attorney's Office, 22 Barnard Street, Suite 300, Savannah, Georgia 31401.

8.     Jurisdiction is proper under 28 U.S.C. § 1346(b) (l) and 28 U.S.C. § 1367(a).

9.     Venue is proper under 28 U.S.C. §1402(b) in that Plaintiffs reside in the Southern District of Georgia and all, or a substantial part of the acts and omission forming the basis of these claims occurred in the Southern District of Georgia, Savannah Division.

10.     STEVEN A. ROTH, M.D. ("Dr. Roth") is and was a physician licensed to practice, and practicing, medicine in the State of Georgia, at all times relevant to this action.

11.     Dr. Roth was an agent, servant, employee, or concerted actor of Defendant U.S.A. acting on its behalf in the course and scope of its business at Winn Army and his office, position, and employment while providing medical care at Winn Army at all times relevant to this action.

12.     At all relevant times there existed between Dr. Roth and Plaintiffs Kara Henderson and G.H. the relationship of physician-patient.

13.     The negligent and wrongful acts and omissions of Dr. Roth are legally imputed to Defendant U.S.A. under one or more theories of imputed liability.

3

Defendant U.S.A. is subject to liability for the negligent and wrongful acts and omissions of Dr. Roth that were a substantial factor proximately causing injury to others, including, but not limited to the Plaintiffs Kara Henderson, William Henderson, and their minor son, G.H.

14.    PATRICIA LONGINO, C.N.M. (hereafter "CNM Longino") is and was a certified nurse midwife licensed to practice and practicing midwifery in the State of Georgia.

15.    CNM Longino was an agent, servant, employee, or concerted actor of Defendant U.S.A. acting on its behalf in the course and scope of its business at Winn Army and her office, position, and employment while providing midwifery care at Winn Army at all times relevant to this action.

16.    At all relevant times there existed between CNM Longino and Plaintiffs Kara Henderson and G.H. the relationship of certified nurse midwife-patient.

17.    The negligent and wrongful acts and omissions of CNM Longino are legally imputed to Defendant U.S.A. under one or more theories of imputed liability. Defendant U.S.A. is subject to liability for the negligent and wrongful acts and omissions of CNM Longino that were a substantial factor proximately causing injury to others including the Plaintiff Kara Henderson, William Henderson, and their minor son, G.H.

18.    At all times relevant to this action, Defendant U.S.A. provided mid-level advanced medical and nursing practitioners, nurses, nurse's aides, and other healthcare providers to patients including but not limited to, the Plaintiff Kara Henderson and her minor son, G.H.  Each of these mid-level advanced medical and nursing practitioners, nurses, nurse's aides, and other healthcare providers was an agent, servant, employee, or concerted actor of Defendant U.S.A. acting on its behalf in the course and scope of its business at Winn Army and his or her office, position, and employment while providing medical care and healthcare services to the Plaintiff Kara Henderson and her minor son, G.H. at Winn Army.

19.    At all relevant times there existed between these mid-level advanced medical and nursing practitioners, nurses, nurse's aides, and other healthcare providers and Plaintiffs Kara Henderson and G.H. the relationship of healthcare provider-patient.

20.    The claims herein are brought against the Defendant U.S.A. pursuant to 42 U.S.C. §233 (g), the Federal Tort Claims Act (28 U.S.C. §2671, *et seq*.), and 28 U.S.C. §1346(b)(l), for money damages as compensation for personal injuries caused by the medical negligence of physicians, certified nurse midwives, mid-level advanced medical and nursing practitioners, nurses, nurses' aides, and other healthcare personnel employed by, appointed by, or acting on behalf of or in concert with, Defendant U.S.A., including but not limited to Dr. Roth, and CNM Longino.

21.     Plaintiffs have fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act by submission of a Notice of Claim to the Department of Health and Human Services ("HHS") on or about September 16, 2022, 27 days before the two-year anniversary of G.H.'s birth. (**Letters to HHS and three Standard Form 95 with attached addendum as Exhibit 1 and incorporated by reference**).

22.     Subsequently, on September 28, 2022, 15 days before the two-year anniversary of G.H.'s birth, HHS Attorney LeAnora Johnson forwarded Plaintiffs' Notice of Claim to the Department of Veterans Affairs ("VA"), whom HHS Attorney Johnson believed was the appropriate agency whose activities gave rise to the claim. (**Emails from HHS to VA forwarding three Standard Form 95s with attached addendum as Exhibit 2 and incorporated by reference**).

23.     Subsequently, on or about October 3, 2022, 10 days before the two-year anniversary of G.H.'s birth, Department of VA's legal assistant, Tina M. Person, confirmed receipt of the tort claims for Mr. William Henderson, Kara Henderson and G.H., "all of which were received on September 27, 2022." (**Email from VA to Plaintiffs' counsel, attached as Exhibit 3 and incorporated by reference**).

24.     Subsequently, on or about November 16, 2022, Plaintiffs were informed by the VA that the VA was forwarding Plaintiffs' Notice of Claim to the U.S. Army Claims Service ("U.S. Army"), whom the VA believed was the

appropriate agency whose activities gave rise to the claim. (**Letter from VA to Plaintiffs regarding forwarding three Standard Form 95s with attached addendum as Exhibit 4 and incorporated by reference**).

25.     On December 30, 2022, Plaintiffs received three letters dated November 29, 2022, from the U.S. Army stating that it received Plaintiffs' Notice of Claim from the VA on November 14, 2022. (**Letters from U.S. Army attached as Exhibit 5 and incorporated by reference**).

26.     The Department of the Army denied Plaintiffs administrative claims on February 7, 2023. (**Letter from Army regarding final denial of Plaintiffs' claims attached as Exhibit 6 and incorporated by reference**)

27.     Plaintiffs, Kara Henderson and William Henderson, individually and as parents, natural guardians, and next friends of G.H., a minor child, are now filing this Complaint pursuant to 28 U.S.C. § 2675(a).

28.     At all relevant times, Defendant U.S.A. held Winn Army out to the Plaintiffs and all other eligible beneficiaries, as a provider of high-quality health care services, with the knowledge, skill, and expertise necessary to protect and maintain the health and safety of patients like Kara Henderson and her unborn child, G.H.

29.     The negligent and wrongful acts and omissions of any and all physicians, certified nurse midwives, mid-level advanced medical or nursing practitioners, nurses, nurses' aides, and other healthcare personnel employed by,

appointed by, or acting on behalf of or in concert with, Defendant U.S.A., at Winn Army, including but not limited to Dr. Roth, and CNM Longino, are legally imputed to Defendant U.S.A. under one or more theories of imputed liability. Defendant U.S.A. is subject to liability for the negligent and wrongful acts and omissions of any and all of these healthcare providers that were a substantial factor proximately causing injury to others including the Plaintiff Kara Henderson, William Henderson, and their minor son, G.H.

30.     Defendant U.S.A. is subject to liability for the negligent and wrongful acts and omissions of any and all physicians, certified nurse midwives, midlevel advanced medical or nursing practitioners, nurses, nurses' aides, and other healthcare personnel employed by, appointed by, or acting on behalf of or in concert with, Defendant U.S.A., at Winn Army, including but not limited to Dr. Roth, and CNM Longino, that were a substantial factor proximately causing injury to others including the Plaintiff Kara Henderson, and her minor son, G.H.

31.     This is a Complaint for damages as compensation for injuries and harm proximately caused by the negligent and other wrongful acts and omissions of the Defendant through its agents, servants, employees, or concerted actors of in providing prenatal, intrapartum, and postpartum medical and hospital care, services, and treatment to Plaintiff Kara Henderson, and her minor son, G.H.

32.     The Plaintiff Kara Henderson claims past general and special damages for her own personal injuries proximately caused by the direct negligence or other wrongful conduct of Defendant U.S.A., and the negligence of other wrongful conduct of any and all physicians, certified nurse midwives, midlevel advanced medical or nursing practitioners, nurses, nurses' aides, and other healthcare personnel employed by, appointed by, or acting on behalf of or in concert with, Defendant U.S.A., at Winn Army, including but not limited to Dr. Roth, and CNM Longino, that were a substantial factor proximately causing injury to others including the Plaintiff Kara Henderson, and her minor son, G.H.

33.     Plaintiff Kara Henderson and Plaintiff William Henderson are the natural parents of their minor child, G.H.

34.     In their individual capacities as parents of G.H., Kara Henderson and William Henderson claim past, present, and future special damages for the personal injuries of their minor son, G.H. resulting in loss of G.H.'s services during minority, and expenses, losses, and costs for G.H.'s medical, hospital, and other care and treatment during minority, among other things, from the time of his birth through his eighteenth birthday.

35.     In their representative capacity as parents, next friends, and natural guardians of their minor son, G.H.,  Plaintiff Kara Henderson and Plaintiff William Henderson claim past, present, and future general damages for G.H.'s personal

injuries, disabilities, physical and mental pain and suffering, lost ability to work and labor, and lost capacity to enjoy life, in the past and in the future, among other things, as well as for his future special damages for medical, hospital, and other care and related expenses for his care and treatment, lost income and diminished earning capacity, among other things, during his majority from the date of his eighteenth birthday throughout the remainder of his life expectancy.

## FACTUAL BACKGROUND

36.    Kara Henderson (hereafter "Kara") received prenatal care from Dr. Robert Behrmann, DO, at Memorial Medical Group (hereafter "MMG") located at 5548 Havron Rd., Apt. B, Fort Sill, OK 73503.

37.    On March 17, 2020, when she was 10 5/7 weeks gestation, Kara was provided a dating ultrasound, which established her expected date of delivery was October 7, 2020.

38.    On May 20, 2020, when she was 20 2/7 weeks gestation, Kara was provided anatomy scan/ultrasound, which was read as normal with no fetal anomalies.

39.    On or around August 11, 2020, when she was 31 6/7 weeks gestation, Kara began receiving prenatal care at Winn Army Community Hospital. Women's Health Care Nurse Practitioner (WHNP). Christine L. Johnson examined Kara on that date and confirmed an estimated date of delivery of October 7, 2020.

40.     At the time of her first visit to Winn Army, Kara's 1-hour Glucose Tolerance Test result was 132 mg/dL and her fundal height was measured as 35 cm, which was noted as "FH large for dates."

41.     On August 12, 2020, when she was 32 weeks gestation, Kara received a growth scan/ultrasound, which showed that G.H. cerebral anatomy was within normal limits and his heart rate was within normal limits.

42.     On September 9, 2020, when she was 36 weeks gestation, Kara presented to Winn Army for routine prenatal care. During Kara's visit, Certified Nurse Midwife (CNM) Kimberly Williams noted that Kara's fundal height was 38 cm. CNM Williams also noted that Kara was "[d]ispleased with care thus far. Asked about [induction of labor]." CNM Williams documented that there was "[n]o indication for induction of labor earlier than 41 weeks at present."

43.     On September 24, 2020, when she was 38 weeks gestation, Kara presented to Winn Army for a routine prenatal visit and was seen by Dr. Roth. Her fundal height was 40 cm and her cervix dilated 2 cm.

44.     On October 1, 2020, when she was 39 1/7 weeks gestation, Kara presented to Winn Army for routine prenatal care. During Kara's visit, CNM Williams noted that Kara was 2 cm dilated and that G.H.'s heartrate was 155 bpm. CNM Williams also noted that Kara was GBS negative.

45. During the October 1 visit, CNM Williams documented that Kara had an unfavorable cervix and swept Kara's membranes during that visit.

46. On October 7, 2020, when she was 40 weeks gestation, Kara presented to Winn Army for routine prenatal care. During Kara's visit, WHNP Johnson noted that Kara's fundal height was 42.5 cm, that she was 3 cm dilated and 50% effaced, and that G.H.'s heartrate was 152 bpm. CNM Williams also noted Kara had a favorable cervix and again swept Kara's membranes during that visit. Kara requested induction of labor, but CNM scheduled a postdates induction for October 14, 2020.

47. On October 13, 2020, at 7:15 a.m., when she was 40 6/7 weeks gestation, Kara presented to Winn Army with complaints of increasing contractions.

48. Beginning at 7:16 a.m., Kara was provided electronic fetal heart monitoring (EFHM), which continued until 7:56 a.m., when it was discontinued.

49. At 9:54 a.m., Nurse Katelyn Wells performed a physical exam on Kara and noted that all vital signs were normal.

50. At 10:20 a.m., Kara was admitted as an inpatient.

51. At 10:29 a.m., Kara was reattached to the EFHM.

52. At 11:22 a.m., a sterile vaginal exam (SVE) performed by Nurse Karen Fasoldt demonstrated that Kara was 3cm dilated, 90% effaced, and G.H., in utero, was at -2 station. Kara's membranes had ruptured spontaneously with clear fluid.

53.     At 11:33 a.m., CNM Longino performed a history and physical exam, and noted that the estimated fetal weight for G.H. was 3700 grams, or 8 pounds, 2 ounces. Kara was labeled a low-risk pregnancy.

54.     At 1:35 p.m., meconium-stained fluid was noted. At that time, Kara was 5cm dilated, 90% effaced and G.H. was at -2 station. CNM Longino signed a note stating, "Cat 1 tracing currently, previously mild variable decelerations have resolved with position change. Contractions – toco to be adjusted."

55.     At 4:22 p.m., an unidentified nurse performed a sterile vaginal examination that showed Kara was 6-7 cm dilated, 100% effaced, and G.H. was still at -2 station.

56.     At 4:22 p.m., CNM Longino noted Category 2 tracing on the monitor, and contractions tracing every 1-2 minutes.

57.     At 4:30 p.m., CNM Longino documented that Kara was in active labor.

58.     At 6:38 p.m., Dr. Steven Roth was at Kara's bedside inserting a fetal scalp electrode.

59.     At 6:58 p.m., Nurse Julie Heflin assumed nursing care from outgoing Nurse Fasoldt.

60.     At 8:00 p.m., Dr. Steven Roth charted that Kara was completely dilated.

61.     At 8:18 p.m., Kara began pushing.

62.     At 9:00 p.m., G.H.'s fetal heart rate baseline decreased to 100-110 bpm.

63.     Between 9:20 p.m. and 9:40 p.m., G.H.'s fetal heart rate showed minimal variability, with a tachycardic baseline between 170-180 bpm on the EFHM.

64.     At 9:50 p.m., a prolonged deceleration of G.H.'s heartrate appeared on the EFHM.

65.     At 10:33 p.m., the NICU team arrived for delivery due to the presence of meconium.

66.     At 10:40 p.m., G.H. was born by vaginal delivery. He weighed 4350 grams, or 9 lbs 9.4 oz, at delivery.

67.     The Maternal Delivery Data section of Kara's medical record states that this was a spontaneous vaginal delivery with mild shoulder dystocia lasting under 1 minute, responded to with the McRoberts maneuver.

68.     The delivery note section of Kara's medical record states that there was thick meconium present in the fluid at delivery, as well as a loose nuchal cord.

69.     G.H. was placed on a warmer after delivery.

70.     Resuscitation measures were needed, including a continuous CPAP until G.H. was transferred to the NICU at Winn Army.

71.     APGARs were recorded as three (3) at one minute of life and seven (7) at five minutes of life.

72.     Dr. Tometricia L. Brown noted that cord blood gases were not ordered.

73.    Dr. Brown assessed G.H. as appearing cyanotic in color, having bruising on his chest and cephalohematoma, and being macrosomic.

74.    Following resuscitative efforts, Dr. Brown noted that G.H. was experiencing respiratory distress and decreased muscle tone.

75.    In her note in G.H.'s medical record signed at 1:43 a.m. on October 14, 2020, Dr. Brown requested G.H. be transferred to another facility to receive a higher level of care.

76.    At 4:05 a.m., the transfer team arrived at Winn Army Community Hospital.

77.    At 6:12 a.m., G.H. arrived at Memorial Health University Medical Center (hereafter "MHUMC") at which time he remained in the NICU for treatment and monitoring until his discharge on October 27, 2020.

78.    G.H.'s admitting diagnosis was respiratory distress.

79.    On October 14, 2020, G.H. underwent a cranial ultrasound at MHUMC, which was read as normal.

80.    Also, on October 14, 2020, G.H. experienced 5-6 brief "staring" spells and drops in oxygen levels to 60-70%.

81.    G.H. was started on phenobarbital.

82.    On October 15, 2020, G.H. underwent an EEG of his brain at MHUMC, which demonstrated global cerebral dysfunction and was read as abnormal.

83.     On October 18, 2020, G.H. underwent a brain MRI at MHUMC, which demonstrated findings consistent with sequelae of recent seizure, acute ischemia and germinal matrix hemorrhage.

84.     The clinical notes of the treating neonatologists at MHUMC state, "[p]er Neurology MRI read revealed likely ischemic event in utero as cause of seizures."

85.     On October 20, 2020, neurologist Katherine Moretz co-singed a note with NP Angie Ray Moye that stated, "MRI brain showing evidence of ischemia, mainly on left side and corpus callosum. We will need to watch for developmental delays and right hypertonia/spasticity in the future."

86.     Since his discharge from MHUMC on October 27, 2020, G.H. has been diagnosed with hypoxic ischemic encephalopathy related to birth asphyxia and seizures.

87.     As a direct and proximate result of the joint, several, concerted, concurrent, consecutive, coordinated, or separate actions and inactions, and legally and factually indivisible and unapportionable fault of the Defendant U.S.A., through its agents, servants, employees, or concerted actors, G.H. suffered hypoxic ischemic encephalopathy and seizures resulting in a single, indivisible, severe and permanent injury to him.

88.    As a direct and proximate result of the joint, several, concerted, concurrent, consecutive, coordinated, or separate actions and inactions and legally and factually indivisible and unapportionable fault of the Defendant U.S.A, through its agents, servants, employees, or concerted actors, Plaintiff Kara Henderson has suffered in the past, and will continue to suffer in the future, physical injuries, pain and suffering, both mental and physical, medical and other expenses.

89.    As a direct and proximate result of the joint, several, concerted, concurrent, consecutive, coordinated, or separate actions and inactions and legally and factually indivisible and unapportionable fault of the Defendant U.S.A., through its agents, servants, employees, or concerted actors, Plaintiffs Kara Henderson and William Henderson have incurred in the past and will continue to incur in the future extraordinary medical and other costs and expenses, the nature and extent of which is not yet determined, for the care and treatment of G.H. during his minority from the time of G.H.'s birth through his eighteenth birthday, loss of services of their son, G.H., and loss of normal parental relationships with G.H. They assert claims for all available damages due to them for the injuries to G.H. proximately caused to them by the Defendant U.S.A.

90.    As a direct and proximate result of the joint, concerted, several, concurrent, consecutive, or separate actions and inactions and legally and factually indivisible and unapportionable fault of the Defendant U.S.A., through its agents,

servants, employees, or concerted actors, G.H. has suffered, and will continue to suffer in the future, serious physical injury, disfigurement, disability, and physical and mental pain and suffering, mental anguish, depression, and a general impairment and decline of his health. G.H. has suffered, and will continue to suffer in the future, a diminished ability to work and labor, a diminished capacity to enjoy life, a diminished earning capacity, among other things, and will in the future after his eighteenth birthday, incur and suffer special damages, the nature and extent of which is not yet determined, including extraordinary expenses for hospital, medical, and other care and treatment, as well as other necessary care, goods and services, among other things. In their representative capacity as G.H.'s parents, natural guardians, and next friends, Plaintiffs Kara Henderson and William Henderson assert G.H.'s claims for all available damages due to him for the injuries proximately caused by Defendant U.S.A's direct or imputed negligence.

## **DAMAGES**

91.    As a direct and proximate result of G.H.'s personal injuries caused by Defendant U.S.A.'s direct and imputed negligence, G.H. has suffered and will continue in the future throughout his life to suffer, catastrophic personal brain and neurological disabilities and limitations, including, but not limited to, inability or disability to become gainfully employed at the level he otherwise would have achieved and aspired to; loss of income and earning capacity; physical and mental

suffering and emotional distress; loss of mental well-being and functionality, which will subject him to depression and loss of peace of mind; loss of capacity to live an independent, normal life, but he forever will always be dependent on others to care for him and transact his business; loss of capacity to enjoy life; loss of years of life expectancy; loss of freedom; loss of ability to form and enjoy normal relationships with others; probable loss of ability to have a spouse or children of his own; anxiety, fright, shock, worry, loss of self-esteem, and loneliness, among other things. The life he would have enjoyed has been taken from him, and he will never be the same person he would have hoped to become; his dreams will never be achieved or fulfilled. He is entitled to recover general damages to compensate him for all these and other intangible losses in an amount to be determined by the enlightened conscience of the Court. In addition, from the date he reaches his majority, his eighteenth birthday, he will incur and continue to incur throughout the remainder of his life, special damages, the nature and extent of which is not yet determined, including enormous, extraordinary expenses for hospitalization, medical, and care and treatment, as well as other necessary goods and services.

92.    The Plaintiffs, Kara Henderson and William Henderson, in their representative capacity as parents, natural guardians, and next friends of G.H., assert in his behalf all claims he has for all past, present, and future damages and losses he is legally entitled to recover as general and special compensatory damages for his

personal injuries and harm the Defendant USA's direct or imputed negligence were a substantial factor in directly and proximately causing him to suffer.

93.    As a direct and proximate result of her own personal injuries caused by Defendant U.S.A.'s direct and imputed negligence, the Plaintiff Kara Henderson has suffered and will continue in the future to suffer, including general damages for her own physical injury, mental and physical pain and suffering, loss of ability to work due to increased caregiving responsibilities for G.H., mental suffering and emotional distress from witnessing the effects G.H's injuries and disabilities have on him and her own helplessness and inability to protect him from those effects.   For these injuries, Plaintiff Kara Henderson is entitled to recover general damages to compensate him for all these and other intangible losses in an amount to be determined by the enlightened conscience of the Court.   In addition, Plaintiff Kara Henderson is entitled to recover general damages for her loss of G.H.'s services during his minority, and loss of normal parental relationship with G.H.   In addition, Plaintiff Kara Henderson is entitled to recover special damages for the past, present, and future medical and other expenses caused by G.H.'s personal injuries from the date of his birth throughout his minority until he reaches his eighteenth birthday. The nature and extent of these special damages is not yet determined.   And, the burden of struggling to acquire the financial means to pay for those expenses will cause the

Plaintiff, Kara Henderson, to suffer additional general damages in the form of anxiety, fright, shock, worry, and loss of peace of mind.

94.     The Plaintiff Kara Henderson in her individual capacity asserts her claims for all past, present, and future damages and losses she is legally entitled to recover as compensation for her personal injuries and harm the Defendant USA's direct or imputed negligence were a substantial factor in directly and proximately causing her to suffer.

95.     As a direct and proximate result of G.H.'s personal injuries, Plaintiff William Henderson has suffered the loss of services of his child G.H. and loss of normal parental relationship with G.H.  For these injuries, Plaintiff William Henderson is entitled to recover general damages to compensate him for all these and other intangible losses in an amount to be determined by the enlightened conscience of the Court.

96.     As a direct and proximate result of Kara Henderson's personal injuries, Plaintiff William Henderson has suffered the injury and harm to his marital relationship with his wife.  For these injuries, Plaintiff William Henderson is entitled to recover general damages to compensate him for all these and other intangible losses in an amount to be determined by the enlightened conscience of the Court.

97.     In addition, Plaintiff William Henderson is entitled to recover special damages for the past, present, and future medical and other expenses caused by

G.H.'s personal injuries from the date of his birth throughout his minority until he reaches his eighteenth birthday. The nature and extent of these special damages is not yet determined.  And, the burden of struggling to acquire the financial means to pay for those expenses will cause the Plaintiff, William Henderson, to suffer additional general damages in the form of anxiety, fright, shock, worry, and loss of peace of mind.

98.    Plaintiff William Henderson in his individual capacity asserts his claims for all past, present, and future damages and losses he is legally entitled to recover as compensation for his injuries and harm the Defendant USA's direct or imputed negligence were a substantial factor in directly and proximately causing him to suffer.

99.    All conditions precedent to bringing this action and asserting the claims alleged herein have occurred, have been performed, or have been excused.

### COUNT 1 – IMPUTED LIABILITY MEDICAL NEGLIGENCE CLAIM AGAINST DEFENDANT U.S.A.

100.   Paragraphs 1 - 99 are incorporated by reference.

101.   Defendant U.S.A. and its agents, servants, employees, or concerted actors, Dr. Roth, CNM Longino, and the mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers who provided care to Plaintiffs Kara Henderson and G.H. at Winn Army on October

13, 2020, owed a duty to its patients, Kara Henderson and G.H., to possess and exercise that reasonable degree of care and skill possessed and used by the same kind of health care providers performing the services they were performing generally under similar conditions and like surrounding circumstances.

102.   Defendant U.S.A. owed a duty to its patients, Kara Henderson and G.H., to provide for them an obstetrician, certified nurse midwife, mid-level advanced medial and nursing practitioners, and labor and delivery nurses, nurse's aides, and other healthcare providers who possessed and exercised that reasonable degree of care and skill possessed and used by the same kind of health care providers performing the services they were performing generally under similar conditions and like surrounding circumstances.

103.   Defendant U.S.A. did not provide physicians, certified nurse midwives or nurses to Plaintiffs who exercised that degree of care and skill required of physicians, certified nurse midwives and nurses generally under similar conditions and like surrounding circumstances, and its failure to exercise the appropriate degree of care and skill was a substantial factor that directly and proximate caused the injuries, harm, and damages suffered by the Plaintiffs.

104.   Defendant U.S.A.'s agent, servant, employee, or concerted actor, Dr. Roth, did not possess and exercise that degree of care and skill required of obstetricians generally under similar conditions and like surrounding circumstances.

105.   Defendant U.S.A.'s agent, servant, employee, or concerted actor, CNM Longino, did not possess and exercise that degree of care and skill required of certified nurse midwives generally under similar conditions and like surrounding circumstances.

106.   Defendant U.S.A.'s agents, servants, employees, or concerted actors, the mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers that provided care to Plaintiffs Kara Henderson and G.H. on October 13, 2020, did not possess and exercise that degree of care and skill required of such healthcare providers generally under similar conditions and like surrounding circumstances.

107.   Dr. Roth's failure to possess and exercise that reasonable degree of care and skill possessed and used by obstetricians generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

108.   Defendant U.S.A.'s failure to provide an obstetrician to Plaintiffs who possessed and exercised that reasonable degree of care and skill possessed and used by obstetricians generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the

injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

109. CNM Longino's failure to possess and exercise that reasonable degree of care and skill possessed and used by certified nurse midwives generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

110. Defendant U.S.A.'s failure to provide a certified nurse midwife to Plaintiffs who possessed and exercised that reasonable degree of care and skill possessed and used by certified nurse midwives generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

111. The failure of the mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers that provided care to Plaintiffs Kara Henderson and G.H. on October 13, 2020, to possess and exercise that reasonable degree of care and skill possessed and used by such healthcare providers generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the

injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

112.   Defendant U.S.A.'s failure to provide mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers that provided care to Plaintiffs Kara Henderson and G.H. on October 13, 2020, to Plaintiffs who possessed and exercised that reasonable degree of care and skill possessed and used by such healthcare providers generally under similar conditions and like surrounding circumstances were a substantial factor that directly and proximate caused the injuries, harm, and damages suffered by Plaintiffs, Kara Henderson, William Henderson and G.H.

113.   Specifically, the care provided to Kara Henderson and G.H. by Defendant U.S.A. by and through its agents, servants, employees, or concerted actors, including but not limited to, Dr. Roth, CNM Longino, and the mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers that provided care to Plaintiffs Kara Henderson and G.H. on October 13, 2020, fell below the applicable standard of care and treatment required of physicians, certified nurse midwives and nurses generally under similar conditions and like surrounding circumstances in the following ways, among others:

    a.  Did not provide Kara Henderson and G.H. with reasonable care and/or such care as would a reasonably prudent obstetrician, certified nurse midwife or nurse;

b.  Did not appropriately diagnose, monitor and treat Kara Henderson during the labor and delivery period;

c.  Did not recognize signs of fetal intolerance of labor during labor;

d.  Did not timely respond and intervene to signs of fetal intolerance of labor during labor;

e.  Did not appropriately monitor and supervise the certified nurse midwife and nursing staff;

f.  Did not appropriately correspond and collaborate with CNM Longino;

g.  Did not timely summon assistance from a physician as appropriate;

h.  Did not timely turn over primary care of Kara Henderson and G.H to a physician;

i.  Did not advocate for a change in the plan of care when fetal intolerance of labor was evident;

j.  Did not timely deliver G.H. through c-section;

k.  Did not provide or obtain informed consent;

l.  Did not appropriately document the medical record;

m.  Did not establish collaborative care with a physician for Kara Henderson and G.H.;

n.  Did not take such additional precautions or care as are revealed through the course of discovery; and

o.  Were otherwise negligent on the occasion in question.

114.   The negligent acts and omissions of Defendant U.S.A. by and through its agents, servants, employees, or concerted actors, including, but not limited to, Dr. Roth, CNM Longino, and mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers that provided care to Plaintiffs Kara Henderson and G.H. on October 13, 2020, were a substantial factor that directly and proximate caused the injuries, harm, and damages sustained by Plaintiffs, Kara Henderson, William Henderson and G.H.

## COUNT 2 DIRECT LIABLITY
## INSTITUTIONAL NEGLIGENCE CLAIM
## AGAINST DEFENDANT U.S.A.

115.     Paragraphs 1 - 114 are incorporated by reference.

116.     At all times relevant to this action, Defendant U.S.A., acting through its administrators, managers, members of its governing body, and officers of its obstetrics and newborn services negligently failed to develop, implement and enforce appropriate policies, procedures, and protocols at Winn Army concerning the prenatal, intrapartum, and postpartum care of obstetrical patients such as Plaintiff Kara Henderson and her son, G.H.

117.     At all times relevant to this action, Defendant U.S.A., acting through its administrators, managers, and governing body, negligently failed to develop, implement and enforce appropriate policies, procedures, and protocols at Winn Army dealing with the instruction, training and supervision of its labor and delivery healthcare providers regarding the prenatal, intrapartum, and postpartum care of obstetrical patients such as Plaintiff Kara Henderson and her son, G.H.

118.     At all times relevant to this action, Defendant U.S.A., acting through its administrators, managers, and governing body, negligently failed to ensure that its agents, servants, employees, or concerted actors at Winn Army who were engaged in the care and treatment of patients such as Plaintiff Kara Henderson and

her son, G.H., were adequately instructed, trained and supervised under appropriate policies, procedures, and protocols.

119.     Specifically, on October 13, 2020, and thereafter, Defendant U.S.A. knew, or reasonably should have known, that there were inadequate policies, procedures, and protocols at Winn Army regarding the management of the prenatal, intrapartum, and postpartum period, fetal intolerance of labor, and emergency cesarean sections, among other things.

120.     Defendant U.S.A. knew or reasonably should have known, that its agents, servants, employees, or concerted actors at Winn Army engaged in the care of Plaintiff Kara Henderson and her son, G.H., were not adequately instructed, trained, or supervised in the prenatal, intrapartum, and postpartum care of obstetrical patients and their unborn babies, which resulted in the negligent failure of Dr. Roth, CNM Longino, and the mid-level advanced medical and nursing practitioners, labor and delivery nurses, nurse's aides, and other healthcare providers who were engaged in the care and treatment of Plaintiff Kara Henderson and her son, G.H. on October 13, 2020,  to appropriately and timely treat Plaintiff Kara Henderson and her son, G.H..

121.     The negligent and wrongful acts and omissions of Defendant U.S.A. in failing to provide and ensure that its agents, servants, employees, or concerted actors at Winn Army were adequately instructed, trained, and supervised under appropriate

policies, procedures, and protocols, were a substantial factor that directly and proximately caused the injuries suffered by Kara Henderson, William Henderson and G.H.

WHEREFORE, PLAINTIFFS, KARA HENDERSON and WILLIAM HENDERSON, individually and as parents, natural guardians, and next friends of G.H., a minor, demand judgment against the Defendant U.S.A. as follows:

1. Damages in the amount of $25,000,000;

2. Post- judgment interest at the prevailing lawful rate;

3. Plaintiffs' costs in this action; and

4. Such other and further relief as the Court may deem just and proper.

This 1st day of August, 2023

Attorneys for Plaintiff:

TUCKER LONG, P.C.
   By:  /s/ Thomas W. Tucker
        Thomas W. Tucker, GA Bar No. 717975

453 Greene Street
Augusta, GA 30901
TEL 706-722-0771
T. Tucker Email:  ttucker@tuckerlong.com

## NOTICE OF FUTURE APPEARANCE OF ADDITIONAL COUNSEL

The attorneys listed below are not admitted to practice in this court yet and are not appearing as counsel for the Plaintiffs at this time. Their names, addresses, and telephone numbers are being provided for informational purposes only. Their applications for admission to this court either generally or pro hac vice are being filed. These attorneys will file their notices of appearance as attorneys for the Plaintiffs upon their admission to practice in this court.

William S. Stone
Georgia Bar No. 684636
James W. Stone
Georgia Bar No. 328708
THE STONE LAW GROUP TRIAL LAWYERS, LLC
5229 Roswell Road NE
Atlanta, GA 30342
404-436-2766
W. Stone Email: billstone@stonelaw.com

Lisa B. Weinstein **
IL State Bar No. 6290253
Edward J. Aucoin, Jr.**
IL State Bar No. 6236645
GRANT & EISENHOFER P.A.
30 N. LaSalle St., Suite 2350
Chicago, IL 60602
(312) 610-5350
L. Weinstein Email: lweinstein@gelaw.com
 E. Aucoin Email: eaucoin@gelaw.com
**Pro Hac Vice Application to be filed