**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| KARA HENDERSON and WILLIAM HENDERSON, individually and as Parents, Next Friends, and Natural Guardians of G.H., their minor child,<br><br>   Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | CIVIL ACTION NO.: 4:23-cv-216 |

**O R D E R**

Presently before the Court is Defendant United States of America's Motion to Dismiss Plaintiffs' Complaint. (Doc. 18.) Plaintiffs Kara and William Henderson sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq.*, seeking damages for injuries sustained at Winn Army Community Hospital ("WACH") in Fort Stewart, Liberty County, Georgia, in connection with the birth of their son, G.H. (Doc. 1.) Defendant argues the Court must dismiss this suit because Plaintiffs did not timely present their claims to the appropriate federal agency and they failed to attach an expert affidavit as required by Georgia law. (Doc. 18.) The issues have been fully briefed. (Id.; docs. 21, 27.) Though Defendant's timeliness argument is unavailing, it's contention regarding the expert affidavit is meritorious. Consequently, as explained below, the Court **GRANTS** Defendant's Motion, (doc. 18), and **DISMISSES** Plaintiff's Complaint, (doc. 1).

**BACKGROUND**

**I.      Factual Background**

The following facts are set forth in the Complaint. (Doc. 1.) Beginning on or around August 11, 2020, Kara Henderson, who was pregnant with G.H., began receiving prenatal care at WACH with an estimated due date of October 7, 2020. (Id. at p. 10.) During her routine prenatal visits, Kara had expressed she was displeased with her care. (Id. at p. 11.) On October 7, 2020, Kara returned to WACH for routine prenatal care and requested induction of labor, but the healthcare providers at WACH scheduled a postdates induction for October 14, 2020. (Id. at p. 12.) The morning of October 13, 2020, Kara presented to WACH with complaints of increasing contractions. (Id.) By 4:30 p.m. that afternoon, Kara was in active labor. (Id. at p. 13.) G.H. was born on October 13, 2020, at 10:40 p.m. (Id. at p. 14.) According to the Complaint, the Maternal Delivery Data section of Kara's medical records states that "this was a spontaneous vaginal delivery with mild shoulder dystocia lasting under 1 minute, responded to with the McRoberts maneuver." (Id.) G.H. required resuscitation measures and was transferred to the Neonatal Intensive Care Unit ("NICU") at WACH. (Id.) Following resuscitative efforts, G.H. was experiencing respiratory distress and decreased muscle tone, and the doctor requested G.H. be transferred to another facility to receive a higher level of care. (Id.)

The morning of October 14, 2020, G.H. was transferred to Memorial Health University Medical Center ("MHUMC") with an admitting diagnosis of respiratory distress. (Id.) Over the next 13 days, G.H. underwent various tests and studies of his brain, including an ultrasound, at least two MRIs, and an EEG. (Id. at pp. 15–16.) An October 18, 2020, brain MRI was noted as having "revealed likely ischemic event in utero as cause of seizures." (Id. at p. 16.) G.H. remained in the MHUMC NICU for treatment and monitoring until his discharge on October 27, 2020. (Id.) According to the Complaint, "since his discharge from MHUMC on October 27, 2020, G.H. has

been diagnosed with hypoxic ischemic encephalopathy related to birth asphyxia and seizures."
(Id.)

## II.     Procedural History

Plaintiffs first submitted a "Notice of Claim" and accompanying Standard Form 95[1] to the Department of Health and Human Services ("HHS") on or about September 16, 2022.  (Doc. 1, p. 6.)  On September 28, 2022, HHS forwarded Plaintiffs' Notice of Claim to the Department of Veterans Affairs ("VA"), which HHS stated was the Federal agency whose activities gave rise to the claim.  (Id.)  On October 3, 2022, the VA confirmed that it had received Plaintiffs' Notice of Claim.  (Id.)  Then, on November 16, 2022, the VA notified Plaintiffs that the claims had been forwarded to the U.S. Army, which the VA stated was the Federal agency responsible for the claim. (Id. at pp. 6–7.)  On November 29, 2022, the Army confirmed to Plaintiffs that it had received the Notice of Claim, and, on February 7, 2023, it denied Plaintiffs' administrative claims.  (Id. at p. 7.)

Plaintiffs sued on August 1, 2023, under the FTCA, seeking to hold Defendant vicariously and directly liable for the actions of healthcare providers at WACH during the birth of G.H.  (See generally id.)  Defendant then filed the at-issue Motion to Dismiss, arguing that Plaintiffs' claims are time-barred and that Plaintiffs failed to provide an expert affidavit as required under Georgia law.  (Doc. 18.)  Plaintiffs filed a Response, (doc. 21), and Defendant filed a Reply, (doc. 27.)

## DISCUSSION

## I.     Statute of Limitations

---

[1]  "A Standard Form 95 is the standard form used to file a claim against the government under the FTCA." Dalrymple v. United States, 460 F.3d 1318, 1322 n.3 (11th Cir. 2006) (citing 28 C.F.R. § 14.2(a).)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Generally, the existence of such an affirmative defense "will not support a motion to dismiss." Quiller v. Barclay's Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984) (citations omitted). "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." Id. When this is the case, the pleading "has a built-in defense and is essentially self-defeating. The problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists." Quiller, 727 F.2d at 1069 (cleaned up).

Plaintiffs sued under the FTCA. (See doc. 1.) The FTCA permits the government to be sued in tort for certain actions by federal officials. See Motta ex rel. A.M. v. United States, 717 F.3d 840, 843 (11th Cir. 2013). "[A]n FTCA claim shall be barred unless the claim is presented in writing to the appropriate Federal agency within two years after such claim accrues." Dotson v. United States, 30 F.4th 1259, 1266 (11th Cir. 2022); 28 U.S.C. § 2401. "These claims are presented to the appropriate agency on what is called a Standard Form 95," and "[f]ailure to present the claim to the appropriate agency within two years after the claim accrues may result in the claim being 'forever barred.'" Willingham v. United States, No. CV 115-025, 2015 WL 7582548, at *2

(S.D. Ga. Nov. 25, 2015) (quoting 28 U.S.C. § 2401(b)).  In defining "appropriate agency," 28

C.F.R. § 14.2(b)(1) provides,

> A claim shall be presented to the Federal agency whose activities gave rise to the claim.  When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer.  If transfer is not feasible the claim shall be returned to the claimant.

28 C.F.R. § 14.2(b)(1).  Here, neither party disputes that the Army is the appropriate agency and

that Plaintiffs presented their claims to the Army on November 14, 2022.  (Doc. 18, p. 5; doc. 21,

p. 16; doc. 1-6, p. 2.)

"[A] medical malpractice claim under the FTCA accrues when the plaintiff is, or in the

exercise of reasonable diligence should be, aware of both her injury and its connection with some

act of the defendant."  Price v. United States, 775 F.2d 1491, 1494 (11th Cir. 1985).  That is, the

claim accrues "when the plaintiff knows both the existence and the cause of his injury," and not

"at a later time when he also knows that the acts inflicting the injury may constitute medical

malpractice."  United States v. Kubrick, 444 U.S. 111, 113 (1979).

The Eleventh Circuit has held that "erroneous or inconclusive advice from doctors" can

toll the statute of limitations.  Chamness ex rel. Chamness v. United States, 835 F.2d 1350, 1353

(11th Cir. 1988).  "[P]laintiffs seeking to understand the cause of an injury may reasonably rely on

advice and assurances by doctors."  Id.; see Gess v. United States, 991 F. Supp. 1332, 1342 (M.D.

Ala. 1997) (if a plaintiff has been "actively misled about the cause of . . . injuries . . . [s]uch

misinformation may act to toll the statute of limitations").  Yet "[o]nce the plaintiff discovers that

her injury is probably attributable to some act of those who treated her, there is no longer any

reason to toll the statute of limitations."  Price, 775 F.2d at 1493.

In its Motion to Dismiss, Defendant argues that the statute of limitations expired on October 13, 2022, because Plaintiffs' claim accrued October 13, 2020, the date Kara Henderson went into labor, delivered G.H., and learned of the complications at G.H.'s birth. (Doc. 18, pp. 4–5.)  In the alternative, Defendant contends Plaintiffs' claims accrued "on October 27 when they were aware that G.H.'s condition was . . . connected to 'birth asphyxia.'" (Doc. 27, pp. 7–8.)  In either event, because the Army received Plaintiffs' claims on November 14, 2022, more than two years later, Defendant argues that Plaintiffs' claims are untimely.  (Doc. 18, pp. 5–6.)

Defendant misstates Plaintiffs' Complaint, which states only that "[s]ince his discharge from MHUMC on October 27, 2020, G.H. has been diagnosed with hypoxic ischemic encephalopathy related to birth asphyxia and seizures." (Doc. 1, p. 16.)  The face of the Complaint does not make clear when G.H. was diagnosed with birth asphyxia.  The Complaint indicates only that it was *after* G.H.'s October 27, 2020, discharge.  Even if, as Defendant argues, a birth asphyxia diagnosis provides Plaintiffs with "particularized knowledge that, in some degree, G.H.'s birth . . . contributed to his injuries," (doc. 27, p. 16), it is not evident from the face of the Complaint when this diagnosis was received, and therefore, this cannot serve as the basis for time-barring Plaintiffs' claims.[2]

---

[2]  Plaintiffs, in their Response, contend their claims accrued no earlier than January 7, 2021. (Doc. 21, pp. 9–14.)  The thrust of this argument relies on filings outside the Complaint.  According to Plaintiffs' affidavits filed with their Response, the healthcare providers at WACH repeatedly told them that G.H.'s injuries resulted from genetics, and it was not until they were seen by Low Country Genetics on January 7, 2021, that they learned that G.H.'s injuries were possibly caused by the negligent acts and omissions of those at WACH. (Docs. 21-1, 21-2.)  Thus, as Plaintiffs' argument goes, before January 7, 2021, Plaintiffs "w[ere] still unknowledgeable about the *cause* of [the] injury." Chamness, 835 F.2d at 1353.  Because Plaintiffs presented their claims to the Army less than two years after this date, they contend their claims are timely. (Doc. 21, pp. 9–13.)  Again, however, "[t]he scope of the review [on a motion to dismiss] must be limited to the four corners of the complaint." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002); see also Twombly, 550 U.S. 544.  In Plaintiffs' Complaint, there is no mention of Plaintiffs' January 7, 2021, visit with Low Country Genetics or those at WACH previously attributing causation to genetics. (See generally doc. 1.)  Nor does the Complaint reference any document that would otherwise contain this information. (Id.)

The Complaint does not state, reference, or attach any document indicating when Plaintiffs discovered that G.H.'s injuries related to the care provided at his birth. (Id.) Looking solely to the face of Plaintiffs' Complaint, it does not clearly establish any accrual date, and therefore, it cannot be said here that the Complaint forecloses Plaintiffs' cause of action. In Defendant's Motion to Dismiss, Defendant cites only the general principle that medical malpractice claims under the FTCA accrue when the plaintiff is (or should be) aware of both the injury and its connection with some act of the defendant. (Doc. 18, pp. 14–15 (citing Price, 775 at 1494)). Defendant does not point to any part of the Complaint that provides the date (or even general period) when Plaintiffs learned of the cause of G.H.'s injuries; Defendant simply assumes an accrual date of October 13, 2020, as that is G.H.'s birth date. In their Reply, Defendants argue that October 13, 2020, must be the accrual date because the complications surrounding G.H.'s birth would lead a reasonably diligent plaintiff to connect the injury with some act of Defendant. (Doc. 27, pp. 2–8.)

This is not necessarily the case. Defendants cite no binding precedent that Plaintiffs, who do not appear to have medical degrees, should know that G.H.'s complications must have resulted from the care given by the staff at WACH rather than by some different cause in utero or at the time of his birth. In fact, Plaintiffs allege that G.H.'s MRI, which occurred five days after Defendant's proposed accrual date, credited a "likely ischemic event in utero as [the] cause of [G.H.'s] seizures." (Doc. 1, p. 16.) Simply put, "a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so." Chamness, 835 F.2d at 1353 (internal quotations omitted). Particularly at the motion to dismiss stage, it cannot be said that Defendant's statute of limitations defense "clearly appears on the face of [Plaintiffs' C]omplaint" or that Plaintiffs' Complaint is "essentially self-defeating." Quiller,

727 F.2d at 1069.  Accordingly, at this stage, Plaintiffs' claims are not clearly time-barred under the FTCA, and Defendant's Motion to Dismiss on this ground will be **DENIED**.

**II.      Georgia's Expert Affidavit Requirement in Medical Malpractice Claims**

The FTCA provides that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  The FTCA also establishes that liability is determined "in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Courts have explained that the "law of the place" incorporates the law of the state where the alleged tort occurred.  See Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001); Molzof v. United States, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.").  Moreover, "unless the facts support liability under state law, the district court lacks subject matter jurisdiction to decide an FTCA claim."  Ochran, 273 F.3d at 1317 (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990) (per curiam)).  Plaintiffs' Complaint alleges that the medical malpractice occurred at WACH in Georgia, meaning Georgia law applies.  (See doc. 1, p. 1.)

Georgia law requires medical malpractice plaintiffs to submit an affidavit from a competent expert, "set[ting] forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."  O.C.G.A. § 9-11-9.1(a).  Plaintiffs have not submitted an affidavit.  For this reason, Defendant argues that dismissal is required by law.  (Doc. 18, pp. 13–14.)  Plaintiffs, however, contend that O.C.G.A. § 9-11-9.1's affidavit requirement is a purely procedural pleading requirement in conflict with Federal Rule of Civil Procedural 8 and thus does not apply to their claim brought in federal court.  (Doc. 21, pp. 18–24.)

The issue before the Court is whether O.C.G.A. § 9-11-9.1 applies to actions brought in federal court under the FTCA.  When previously addressing this question, this Court observed that

> The application of Georgia's affidavit requirement in federal cases is not entirely clear.  The requirement clearly *does not* apply to medical malpractice actions pursued under the Court's diversity jurisdiction.  See, e.g., Allen v. Kroger Co., [No. 5:18-cv-389,] 2018 WL 6729646, at * 5 (M.D. Ga. Dec. 21, 2018) (explaining that the Middle District "has consistently held that the expert affidavit rules of [O.C.G.A.] § 9-11-9.1 are purely procedural and therefore not applicable in cases before the Court under diversity jurisdiction." (citations omitted)).  Nevertheless, there is some authority in the Circuit that such an affidavit *is* required in FTCA cases.  See Nelson v. United States, 478 F. App'x 647, 648 (11th Cir. 2012) (noting that an FTCA plaintiff, proceeding under Missouri law, who failed to file an affidavit was subject to dismissal without prejudice); see also Fluellen v. United States, [No. 2:07-cv-44,] 2008 WL 4360618, at * 5 (S.D. Ga. Sept. 24, 2008) (listing the affidavit requirement in discussing the elements of an FTCA medical malpractice claim).  The Court is unaware, however, of any case definitively applying Georgia's affidavit requirement to an FTCA claim.

Mansfield v. United States, No. CV419-168, 2020 WL 1130860, at *3 (S.D. Ga. Mar. 6, 2020).

The Court in Mansfield ultimately concluded, "[b]ased on the balance of authority, if not complete agreement of analyses, . . . [that] Georgia's affidavit requirement should apply to . . . FTCA/medical malpractice case[s]."[3]  Id. at *4.  In arriving at this conclusion, the Court relied on "[s]everal United States Courts of Appeals [that] have held that other states' affidavit requirements apply to FTCA malpractice claims," including the Ninth Circuit, the Third Circuit, the Eighth Circuit, and the Fourth Circuit.[4]  Id. at *3.  Specifically, the Ninth Circuit determined that Nevada's comparable affidavit requirement applied to an FTCA malpractice claim.  See Swails v. United States, 406 F. App'x 124, 126 (9th Cir. 2010) (because FTCA claim was governed by state law

---

[3]  This conclusion has since been endorsed by the Middle District of Georgia.  See Knapik v. United States, No. 5:19-CV-00185-TES, 2020 WL 7775429, at *12 n.29 (M.D. Ga. Dec. 30, 2020).

[4]  Though the Third Circuit decision that the Court relied on in Mansfield, Horne v. United States, 223 F. App'x 154, 156 (3d Cir. 2007), has likely since been displaced by a more recent, published decision, Wilson v. United States, 79 F.4th 312, 319-20 (3d Cir. 2023), this, alone, is insufficient to completely shift "the balance of authority" to the opposite outcome here.  Mansfield, 2020 WL 1130860, at *4.

and alleged professional malpractice, plaintiff "was obliged to submit an affidavit of merit when he filed suit"). Likewise, the Eighth Circuit affirmed the dismissal of an FTCA malpractice claim for failure to comply with state affidavit requirements, Mathison v. United States, 44 F. App'x 27, 28–29 (8th Cir. 2002), and the Fourth Circuit determined that North Carolina's medical malpractice affidavit requirement, which is nearly identical to Georgia's, applied to FTCA claims, Littlepaige v. United States, 528 F. App'x 289, 292 (4th Cir. 2013). As articulated by the Fourth Circuit in Littlepaige,

> A plaintiff may recover against the United States only to the extent that it has expressly waived sovereign immunity. Congress waived the sovereign immunity of the United States for certain torts committed by federal employees when it enacted the FTCA in 1946. However, the FTCA is a limited waiver of immunity, imposing tort liability on the United States only in the same manner and to the same extent as a private individual under like circumstances, and only to the extent that a private person[ ] would be liable to the claimant in accordance with the law of the place where the act or omission occurred. In other words, a claimant has an FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances. Thus, the substantive law of each state establishes the cause of action.

Id. (internal quotations and citations omitted). This, the court found, requires that, in an action under the FTCA, a federal court "must rule as the [state] courts would," meaning that a federal court must apply a state-law affidavit requirement. Id.

Georgia law is clear that "[a]bsent compliance with the expert affidavit requirement, a medical malpractice claim is subject to dismissal for failure to state a claim." Jensen v. Yong Ha Engler, 733 S.E.2d 52, 54 (Ga. Ct. App. 2012). Because the FTCA's limited waiver of sovereign immunity applies only "to the same extent as a private individual in like circumstances," Defendant cannot be held liable where Plaintiffs' Complaint would have been dismissed under Georgia law. 28 U.S.C. § 2674. Put another way, "[j]ust as a private party in [Georgia] would not be liable if a plaintiff failed to meet the [Georgia expert affidavit] requirement, so, too, would the government

10

not be liable if an FTCA plaintiff failed to meet that requirement." <u>Sowers v. United States</u>, 141

F. Supp. 3d 471, 476–77 (E.D. Va. 2015).  Accordingly, even though Georgia's expert affidavit

requirement has been described as "purely procedural" and thus inapplicable in cases before the

Court under diversity jurisdiction, <u>Allen</u>, 2018 WL 6729646, at * 5, if the requirement affects the

liability of the United States in the FTCA context, it must be incorporated as a pertinent element

of substantive state law for Plaintiffs' FTCA claim.  Other courts have likewise concluded that it

is the "majority position that these types of requirements are substantive [for purposes of the

FTCA] and not in conflict with federal rules." <u>Bennafield v. United States</u>, No. 4:12CV3010, 2013

WL 5173221, *1 (N.D. Ohio Sept. 12, 2013).  Plaintiffs offer no other argument as to why they

should be exempt from this requirement.  (<u>See generally</u> doc. 21, pp. 19–24.)  Without the required

affidavit, Plaintiffs' medical malpractice claims are subject to dismissal,[5] and Defendant's Motion

to Dismiss on this ground is **GRANTED**.

---

[5]  Though the Court in <u>Mansfield</u> allowed leave to amend, it did so under the "safe harbor" provision of O.C.G.A. § 9-11-9.1, which allows a plaintiff to cure his affidavit issue within thirty days of service of the motion alleging that the affidavit is defective. <u>Mansfield</u>, 2020 WL 1130860, at *4 (citing O.C.G.A. § 9-11-9.1(e)).  Defendant's Motion to Dismiss, which first alleged that Plaintiffs failed to meet Georgia's expert affidavit requirement, was filed October 6, 2023, and Plaintiffs still have not filed (nor have they sought to file) the necessary expert affidavit. (Doc. 18.)  The safe harbor window is long past. Additionally, the plaintiff in <u>Mansfield</u> was acting pro se, so granting leave to amend was consistent with the Eleventh Circuit's mandate to permit pro se plaintiffs at least one opportunity to amend defective pleadings. <u>Id.</u> at *4 (citing <u>Jenkins v. Walker</u>, 620 F. App'x 709, 711 (11th Cir. 2015)).  This rationale is inapplicable here, as Plaintiffs have been represented by counsel since the suit was filed. (<u>See</u> doc. 1.)

## CONCLUSION

For the above reasons, Plaintiffs failed to comply with Georgia law when they did not file an expert affidavit in support of their medical malpractice claims as required by O.C.G.A. § 9-11-9.1.  Thus, the Court **GRANTS** Defendant's Motion to Dismiss.  (Doc. 18.)  With no further claims remaining, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case.

**SO ORDERED**, this 3rd day of June, 2024.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

12